The next case today is case number 22-1100, United States v. Lavenier Jackson. Attorney Brown, can you please come up to the podium and introduce yourself? Good morning. My name is Simon Brown. I represent Lavenier Jackson. I'd like to use the majority of my time to address the middle issue in our brief, that is the issue on the interstate nexus expert. And I'd also like to reserve one minute of rebuttal. You may. Thank you. As the Court knows, Mr. Jackson was charged with two counts of possession of a firearm by a prohibited person.  was a necessary element that the government needed to prove. To do this, they called ATF agent John Forte as an expert witness. The trial court commented in its Rule 29 order that the government's interstate nexus expert's testimony was, quote, not the model of clarity or specificity, end quote. The court also commented that the prosecution's case, quote, would have been better served by eliciting more details about Agent Forte's nexus methodology during a direct examination, end quote. These are correct observations, but it's our position that the agent's expert testimony was worse than that. It was so muddled, so vague and lacking in specifics that it should have been stricken under Rule 702. In summary, so we had two indictments, one involving a Ruger pistol and another indictment involving two Sky pistols, S-C-C-Y, pronounced Sky. So to summarize Agent Forte's testimony, he was qualified as an expert witness, and his basic testimony was that he reviewed the contents of the respective ATF 4473 forms for the firearms. And then he just said, I used the things that I've referenced before, periodicals, databases, various databases and books, to come to my conclusion, but without any kind of detail as to which of those materials he actually consulted and what he learned from them. And because he provided minimal specific facts concerning his methodology, it's our position that it fell short of being admissible and should have been stricken. The agent... Counsel, on appellate review, isn't our standard of the denial of trial counsel's motion to strike abusive discretion? That is correct, Your Honor. Okay. Why is this an abusive discretion? I think the court, in the couple of comments that I just quoted, didn't recognize that this was scant, paper-thin testimony by the agent. Well, the comments kind of show that the court paid attention to the arguments and rejected them. I agree. The court did pay close attention and issued a very detailed order on this. But, you know, studying the transcript, you know, a great amount of time was spent qualifying him as a witness, where he talked generally about what he consulted, but when he got down to testifying, well, how did you determine these pistols traveled from out of state into New Hampshire? There was very little detail and not enough. So this is in contrast to some of the cases this court has addressed over the years, where, you know, obviously ATF agents such as Mr. Forte can testify, but they have to provide some substance. And this testimony can definitely be contrasted sharply with what we've seen in prior cases, like Corey and Cormier, for instance. Thank you. When he spoke about the Ruger pistol, for instance, he testified that he reached out, Agent Forte reached out to a Ruger representative. Can I ask one? There's a, and I may have this wrong under 702. Sometimes we are concerned or the objection is that the actual explanation given by the expert, and recently I've had some medical malpractice cases where this comes up, and we say there's an analytical gap. You didn't quite explain how you got from what you looked at to your conclusion, which is I understood a slightly different argument than the argument of whether you're qualified in the sense that you've identified a methodology that's a legitimate methodology. The way I read the transcript in this case is that your objection was of the latter sort, not the former sort, when I read that testimony. In other words, there wasn't the argument that, okay, it's a plausible methodology that you've articulated, but in this case there's a kind of analytic gap between how you relied on those things to your conclusion, which could come in the form of, you know, you say you look at a manual that has all these things, and that's what I do when I make one of these judgments. Okay, that's a reasonable methodology. And then you say, how did you do it here? I'm not just seeing right. Well, then you say there's an analytic gap between your methodology and what you, and maybe the testimony here has a gap in that second sort, but I understood the objection being made to the district court was of the first sort, and the district court was saying, you know, I can see what he's saying. He's going to look at a registry. He's going to look at the various manuals, and he's going to see. Well, on that score, it seems harder for me to see how there was an abuse of discretion, and then there was no objection of the second kind, which I agree with you. The record there is pretty paper thin. So can you help me with that, the way I'm framing it? If I'm framing it wrong, that's fine, but that's how I'm going to be helpful for me to hear your thoughts on that. I think your summary is accurate. At trial, we challenged, number one, his ability to testify as an expert. That was denied. So the court allowed him to testify. And then when he was finished testifying, I made another challenge. And at that time, my argument may not have been quite as it is today, but I think I may have, I sort of did that in a close trial. The thing that concerns me is that if the argument had been made at the time, there would have been more chance for the expert to fill in that gap, right? And so to do it now for the first time just raises a concern that often comes up when their objections are phrased somewhat differently on appeal than they were below, that we can't really cure it now, but the time to make it was then. And if we look at just what was argued at the time, that's somewhat different. Well, in our post-trial Rule 29 filings, I think we made more of the argument that I'm making today, and the court obviously considered it and didn't accept it. But it's still the record, and the record is how we testified, and it was, as I say, very weak. You know, he couldn't even tell us the substance of phone calls that he made to make his determination. So, you know, just comparing that with the court's decisions in the last 20-plus years, in our view, it really falls short. Thank you. Any further questions? Counsel, I'd just like to know, with regards to the other arguments that you've made in your brief, how should we handle those? I'll briefly, in my last 45 seconds, address the – we don't waive them. Okay. We don't waive them. That's good enough. Thank you. But the grand jury issue is the other one, and I'll just make the point that the reason that the government went to the grand jury a second time is because they were informed, well, you know, the basis for this felon and possession charge, it doesn't exist. This client was – this defendant was never in Dorchester District Court. So what should they have done beyond what they did do, which was represent it to a grand jury and correct it? Our issue is that they went back to correct it, that they didn't do a good job. They kind of stepped in it. As Judge Barbadaro observed, it was not well done. And what they did is they created an impression, we believe, that Mr. Jackson, at a minimum, at least had a charge in Dorchester District Court for assault with a dangerous weapon, and none of that was true. And so that's the basis for our challenge there. Thank you. Judge Lynch? No, thank you. Thank you. Thank you. You said you have one minute, too. Yes. That you preserved, yeah. Good morning. Seth Aframe for the United States. So I'll start with the expert issue. So I agree that the issue below was raised as a 702, this person is not qualified to testify, and then it resurfaced as a Rule 29, as in there's no evidence in this record on which a jury could conclude that the guns traveled across state lines, and that's what the judge resolved post-trial in his order. So the question, I think, would be is there any evidence by which a jury could have found that the guns traveled across interstate lines. I think that there was. So let me start with the Ruger. Here's what the evidence was. Here's what the testimony was. Do we have that challenge before us on appeal? The Rule 29? Yeah. I thought we didn't. It has been. I thought what we had was, and maybe it's implicit in what you're saying, I thought what we had was a challenge under 702 that's slightly different than whether any methodology had been articulated that plausibly could be the basis for finding interstate nexus, and instead that there shouldn't have been qualification because, in fact, he didn't demonstrate how he used that methodology to come to this conclusion. I can see how that becomes the basis for a Rule 29 challenge, but I just didn't see there being such a challenge to us in appeal. So I think that the—so it's not framed that way in the brief, for sure. Isn't it framed as a 702 challenge? It's framed as a 702. So with respect to the way—I mean, we've got three framings now, but I think we might as well at least stick to the two that are in the brief, or at least the one in the brief. On the 702 challenge, what is the government's position about why that challenge fails, given that I thought we do sometimes say there's a 702 problem if you can't show that the testimony will connect up the methodology stated, that's a legitimate methodology, I'm not doing astrology, to the actual way you are going to go about it in making the finding? Well, the answer here was the agent said, I'm going to rely on databases, certain materials, conversations, prior experience. That's what he said he was—that was the methodology he used, and that's the methodology he employed. So I guess I would like to say to you what the methodology he actually employed and how that connects up. But then when I see the testimony, he doesn't quite say, if I'm reading the testimony right, the expert doesn't quite say what he looked at to come to the conclusion. So I guess that's where I don't agree with you. Okay. So he says, I received from Ruger paperwork that says that if it's got a certain serial number, that means it was produced at a certain place in Arizona. That's step one. So he says, I see that. That sends me on my way to believe this firearm was produced in Arizona. I then go and I look at the ATF database on variances. That tells me whether a subcontractor may have made this particular gun such that maybe it wasn't made in Arizona. He sees no variances, but he knows—this is the testimony— that Ruger has a New Hampshire operation. So out of concern to make doubly sure, he then contacts Ruger to verify that what's in the original paperwork that says this serial number is produced in Arizona was correct. That was the testimony on the Arizona guns. So that's using materials from the company, ATF records from the database, and then following up with the company. As to the SCCY or Skye guns, the testimony was, I have done Skye cases before. They have one manufacturing plant. It is in Florida. This gun was made by them.  Les, I agree with—so to the extent you're going to ask me, well, that doesn't sound like a lot. I would agree with you. Les was done on that one because the possibility of the New Hampshire nexus because the company—he knew based on prior experience that the company only had one manufacturing place. And let me say, also, he checked the variance database to make sure there was no subcontractor involved. I guess what I was looking for is, am I reviewing this aspect of the challenge for plain error? Was this preserved? In other words, how am I supposed to think about what the 702 challenge is? I guess I treated it as you asked me the question of, did the way he articulated his methodology connect up with what he did? Yeah, but typically, given being an appellate court, I only ask such questions through some standard of review. So does the government have a view as to the standard of review that I should be applying as to that question? As to that question, I suppose it would be plain error review, although I did not explicitly say that in my brief. I treated it sort of as in the Rule 29, to be frank, with the court. I didn't quite parse it as finely as you are. So in my view, there was ample discussion of how he did it. And even though I heard many times he didn't say anything, I just don't think that's what the record shows. And I treated it that way, although I think that's a very deferential, by the way, standard of review to the government. Was there any evidence by which the jury could conclude that the finding— Yeah, it's a little more deferential than the abuse of discretion standard. Right, so I sort of viewed it through that prism because I viewed the— Yeah, but I'm saying that's to your benefit to view it through that prism. And I viewed the 702 question to be was he qualified— So on abuse of discretion, if we just look at the abuse of discretion question now, if we're not saying to review it through plain error— Why do I think it was not an abuse of discretion? With respect to the Sky Gun. Because I think that the statement, one, I've done prior cases and I have experience that they have one manufacturing place. Two, I've gone to the ATF variance database, which tells me there was no subcontractor involved. That leads to the inference that it was done at the Sky manufacturing place. And three, I've had contact with Sky. And I agree, the testimony about the contact with Sky was not the model of clarity. I mean, I agree with that, but I do think he does say he contacted Sky. But I think his knowledge, coupled with the database, is sufficient to say that within his discretion, the judge was within his discretion to conclude that that was an ample summary. And I, you know, this court has decided this question multiple times in different, slightly different contacts, Lunier, Cormier, recently in Cortez or Pereza. And this inherently is something where, you know, you're just going to be looking at records like a variance database or where's the company's manufacturing plan. That's the kind of thing that you look at. So, you know, I know that the defense has talked about, you know, the judge made these comments and testimony can always be more detailed for sure. But I do think that the essence of what's necessary was covered here, like in the other cases. So on that issue, I have nothing further unless the court has further questions. Would you like me to address the grand jury matter? I'm happy to. So just briefly, I was the lawyer. And as it says there, you know, my question was not particularly clear. So my purpose, obviously, was to get the new convictions before the grand jury, which we did through fingerprints between the defendant and the person who was convicted. The mistake was when I asked the agent about the prior conviction, his answer instead of was, no, that's not a conviction, was to say, I don't believe that was a guilty conviction. And the point was I let that ambiguity stand. That was not ideal. However, at the grand jury stage, what this is about is whether that had any influence to sway the grand jury. And where there were fingerprints of the defendant and the prior person who was convicted, I don't think that letting that ambiguity stand had any influence of swaying the jury. And Judge Barbadaro found that there was no intentional misconduct. And I think the answer to that sort of objectively is, why would one want to inject that if you had fingerprints of the conviction? So I think that that was not an abusive discretion. Even with the admission of this violent felony that was admitted during the grand jury? So, I mean, it wasn't admitted. So the answer wasn't he had it. It wasn't 100% completely resolved that he didn't. The answer was, I don't know if he has that conviction. And if you want to dial it all the way back, it's because my question was unclear. Because this defendant had multiple convictions in September of 2013. While I was attempting to refer to the one you're talking about, I didn't ask the question well enough. I simply said, does the defendant have a conviction in September 2013? And that was an ambiguous question, because he, in fact, did. But not the one I was talking about. So it was really a question, a poor, poor question to answer, sort of rapport with the agent. But that doesn't get to what the grand jury issue is, which is given the question, which is, does he have a prior conviction? And there were fingerprint evidence that he had at least two. In fact, he had more, but two were proven. I don't think the judge remotely abused his discretion in saying this had no influence on the grand jury's outcome. Thank you. Thank you. I'd just like to touch base on the nexus issue again. So opposing counsel described, you know, how the Agent Forte testified. But in our view, where it broke down is on this variance issue. As the Court knows, a variance means if there is a variance, that means that it could have been subcontracted to a different manufacturer somewhere else. So Agent Forte testified that he did not find a variance for either firearm, but it's when he testified about what he did to corroborate that, that the testimony, in our view, started to fall apart. On Ruger, he couldn't even say who he talked to at Ruger or what that person told him and how that helped shape his opinion. And with the Sky firearms, he talked about, I reached out to an ATF agent. I may have talked to someone at Sky, but he couldn't remember any of those details, which was pretty surprising in what we think is the problem, the 702 problem. But just to be confirmed, the way you're just putting it now was not put to the district court? It was not put that way at the moment of that trial, no. Thanks. Thank you. Thank you. That concludes our argument in this case.